EDDY *vs.* TRAVER and others.

Where real estate descended to an heir at law charged with the payment of debts due from the decedent, and such heir afterwards sold a part of the estate to another person with warranty, which part was subsequently sold under an order of the surrogate for the payment of such debts; *Held,* that the purchaser from the heir had an equitable lien upon the residue of the estate remaining in the hands of such heir to the extent of such purchaser's share of the proceeds of the land sold under the order of the surrogate.

A surety, or a party who stands in the situation of a surety, is entitled to be subrogated to all the rights and remedies of the creditor whose debt he is compelled to pay, as to any fund, lien or equity which the creditor had against any other person or property on account of such debt. And his equitable right of substitution is not lost, except as against bona fide purchasers and mortgagees, by the extinguishment of the lien of the creditor, at law, by the payment of the debt by the surety or out of his property.

Where a creditor has two funds to which he may resort for the satisfaction of his debt, the one of which is primarily and the other only secondarily liable for the payment thereof, the owner of the latter fund stands in the situation of a surety for the owner of the primary fund, in the application of the equitable principle of substitution in behalf of sureties.

Where an heir has conveyed a part of the real estate descended to him leaving the debts of the decedent unpaid, it seems the surrogate may direct the lands still belonging to the heir to be first sold for the payment of such debts; so as to protect the equitable rights of the purchaser from such heir.

THE bill in this suit was filed by two of the heirs at law    July 4.
of G. Eddy for the partition of a part of the real estate of which he died seized; and the case came before the chancellor upon an exception to the report as to incumbrances upon the undivided shares of the several tenants in common in the

1837.

Eddy
v.
Traver.

premises.  G. Eddy died intestate previous to 1829, leaving four children and heirs, of whom Sally the wife of A. Traver was one.  In April, 1829, Traver and wife conveyed to J. & G. W. Ross their undivided one fourth of a part of the real estate of which the intestate died seized, with warranty, leaving their undivided interest in the premises of which partition is sought in this case undisposed of; and G. W. Ross subsequently conveyed his interest in the purchase to J. Ross.  The personal estate of the intestate being found to be insufficient for the payment of his debts, his personal representative applied to the surrogate and obtained an order for the sale of the real estate for that purpose. But instead of selling that part in which all the heirs at law still retained an interest, the administrator sold a part of the lands in which Traver and wife had conveyed their undivided share to J. & G. W. Ross ; and the proceeds thereof were applied to the payment of the intestate's debts.  As Traver and wife still owned their undivided one fourth of the premises which were subsequently decreed to be sold in this partition suit, Ross claimed to have an equitable lien upon their undivided interest therein, to remunerate him for his one fourth of the proceeds of the lands sold under the surrogate's order; which proceeds had been applied to the payment of the debts for which Traver and wife were liable on account of the lands descended to the wife as one of the heirs at law. He also claimed interest from the time he was divested of his title under the sale by order of the surrogate.  The master disallowed this claim of Ross to an equitable lien ; and the report was excepted to on that ground.

*W. Silliman*, for the defendant Ross.  The debts of the testator were in nature of a lien on all the lands descended, and should have been first paid out of the unsold lands. It is a general principle that when the property of one is taken to pay the debts of another, the person whose property is taken will be subrogated to all the rights of the creditor whose debts he has paid.  The lands of Traver and wife unsold are embraced in the order of sale, and Ross should be permitted to use that order or some other proceeding in

its place equally efficacious to reimburse him the money which his property has paid, and which the property of Traver and wife unsold ought to have paid. It is a well settled rule that if lands subject to an incumbrance are sold in parcels at different times, the parcels shall be liable to the satisfaction of incumbrances in the inverse order of their alienation. (*Gonnerreen* v. *Lynch*, 2 *Paige's Rep.* 300.) And if a sale takes place in a different order, the equities of the parties will still be preserved and the error corrected. If an execution issue against the property of principal and surety, the surety may apply to have the property of the principal first sold to satisfy the execution, or he may wait until his property is sold and the debt satisfied, and then use the execution to reimburse himself. In England, where lands desended are not liable for simple contract debts, those debts will be subrogated in place of bond debts paid out of personal assets, and thus be paid out of lands descended. (*See Mad. Pr.* 201, *on marshalling and securities. Idem*, 498, *on marshalling assets. See also Trimmer* v. *Payne*, 9 *vol.* 209. *Rumbold* v. *Rumbold*, 3 *Ves.* 64, and cases cited in the notes. Among others, see *Cheesborough* v. *Millard*, 1 *John. Ch. Rep.* 415. 1 *Dessaus.* 409.) In *Burrows* v. *McWhann*, (1 *Dessaus.* 409,) the court set up and revived a judgment which had been fully paid and satisfied, and of which, satisfaction had been long entered of record in order to enable one surety to use it as a judgment against the estate of a co-surety. In that case are cited 1 *Atk.* 133, 5, 2 *Vern.* 608.

*M. Hoffman*, for Traver and wife. It is admitted that where a surety pays a debt, the law creates a substitution, without any agreement with the creditor; but in general, payment by another person without assignment extinguishes the demand. (*Samped* v. *McLean*, 3 *Paige*, 117. *Niemsewitch*, v. *Gantz*, 3 *Paige*, 648. *Cops* v. *Middleton*, 1 *Turner & Russel*, 231.) Again, the doctrine of substitution is not to be extended to implied liens. (*Ormsby* v. *Tavascon*, 3 *Little's Rep.* 404.) But this doctrine has never been applied to the case of a party taking a conveyance

*1837.*

*Eddy v. Traver.*

of property ; bound to know the possibility of the incumbrance being enforced against it ; guarding himself against that result by full covenants in his deed, and looking to these as his security and protection.　Why should this party have a greater advantage here than he would have at law ?　If evicted, his damages under his covenant would be the consideration money and 6 years interest.　(*Bennet* v. *Jackson*, 13 *John. Rep.* 50.　*Pitcher* v. *Livingston*, 4 *John. Rep.* 1.)　It is impossible to reach the wife's interest in this property.　An express covenant of warranty does not bind a married woman not even by way of estoppel.　(*Jackson* v. *Vanderheyden*, 17 *John. Rep.* 167.　*Martin* v. *Donelly*, 6 *Wendell*, 10.　*Fowler* v. *Shearer*, 7 *Mass. Rep.* 21.)　So in chancery her agreement to convey does not bind her. (*Martin* v. *Mitchell*, 2 *Jac. & Walk.* 412.　*Atwater* v. *Buckingham*, 5 *Con. Rep.* 492.)　The claim of Ross has been adjudicated upon by the surrogate.　He submitted to the adjudication, and cannot, therefore, now revive this question.

THE CHANCELLOR.　Upon the facts disclosed in the master's report, I think that the defendant Ross has an equitable lien upon the undivided interest of Traver and wife in the premises of which partition is sought in this case, to the extent of one fourth of the proceeds of the lands in which he had purchased their share, and which were sold under the surrogate's order ; and also for the interest on that amount from the time of the confirmation of the sale by the surrogate.　It is an established principle of equity that sureties, or those who stand in the situation of sureties for those who pay a debt for them, are entitled to stand in the place of the creditor, or to be subrogated to all his rights as to any fund, lien or equity which he may have against any other person or property on account of the debt.　And where the creditor has two funds to which he may resort for the satisfaction of his debt, if he resorts to that which in equity is only secondarily liable, to the injury of one who has a claim upon the secondary fund only, or resorts to a fund belonging to a third person, which fund is only secondarily liable for the

payment of the debt, the person who is the owner of or has a claim upon the fund thus taken is considered as a surety merely, and is entitled to stand in the place of the creditor as against the primary fund. (1 *Strong's Eq.* 477, § 499. *Idem*, 588, § 633, &c.) It was upon this equitable principle that this court proceeded in the case of *Clowes* v. *Dickinson*, (5 *John. Ch. Rep.* 235,) in charging the payment of a judgment upon lands which had been aliened by the judgment debtor, in the inverse order of their alienation—the first purchaser in such a case standing in the situation of a mere surety for the payment of the judgment debt. In cases depending upon this equitable principle, as between the debtor and his sureties, it makes no difference, except as against bona fide purchasers or mortgagees, that the debt has been actually paid by the sureties, or out of their property, so that the creditors' lien upon the property of the principal debtor is extinguished at law. Thus in the case of *Watts* v. *Kinney*, (3 *Leigh's Rep.* 272,) where the sureties had actualy paid the debt, so that the lien of the creditor's judgment was discharged at law, the court of appeals in Virginia decided that the sureties were in equity entitled to the benefit of the judgment, as a lien upon the land, as against the claims of an attaching creditor. (*See also Cuyler* v. *Ensworth*, *ante*, 32 ; *Burrows* v. *Wham*, 1 *Desaus.* 409 ; and *Sprigg* v. *Braman*, 6 *Louis. Rep.* 206.)

Applying these equitable principles to the case under consideration, there is no doubt of the right of Ross to be substituted in the place of the creditors of the intestate who have been paid their debts by a sale of that part of the property which had been conveyed by Traver and wife, instead of charging such debts upon the property which still remained unsold. If the creditors had brought their suit against the heirs for the payment of the debts of the ancestor, the real estate which remained in the hands of Traver and wife unsold must have been applied for that purpose; and that which had been previously sold and conveyed to Ross would have been discharged. I am inclined to think the surrogate had the power to direct the sale to be made in such a manner as to protect the equitable rights of the purchasers from the heirs at

law. But whether he had such power or not, this court has jurisdiction and authority to protect all the equities of one who was standing in the situation of a mere surety for Traver and wife, so far as the debts of the ancestor remained a lien upon the lands which they had sold to him. And neither the want of such power in the surrogate, nor the neglect to exercise it if the power in fact existed, can in this case deprive the defendant Ross of his equitable claim to be substituted in the place of the creditors of the intestate as to the lien which they had, before the sale under the surrogate's order, upon the lands of Traver and wife held by them in right of such wife as one of the heirs at law to whom such lands had descended, charged with the payment of such debts.

The exception to the master's report was, therefore, well taken. The amount of the proceeds of the sale of Ross' interest in the lands sold under the surrogate's order, together with the interest thereon and his costs, must be paid out of the fund set apart by the decree for that purpose ; and the residue of that fund must be distributed according to the principles of the decree.