## WILKES and others *v.* HARPER and others.

An executor, who was also a devisee and legatee, wasted a large portion of the assets of the testator being more than double his own proportion of the whole estate, and the other legatees were thereby compelled to pay a debt of the testator which he might and ought to have discharged out of the personal effects. In a suit between such legatees, and a creditor of the executor, whose judgment was a lien upon unsold real estate devised to the executor, it not appearing that the devastavit was committed before the docketing of the judgment; it was *held,* that the legatees could not have priority over the legal lien of the judgment creditor, to enforce their right against the defaulting executor upon the real estate so devised to him.

If it had appeared that the whole devastavit had been accomplished before the lien of the judgment attached, *quere* whether the equity of the legatees should be preferred, against such real estate, to the lien of the judgment creditor?

May 5, 6 ; August 12, 1845.

THE bill was filed on the 24th day of July, 1844.

The complainants are the executors, devisees and legatees of Charles Wilkes, who died on the 30th August, 1833, leaving personal property amounting to about $250,000—besides a large real estate. His executors were his sons, Horatio, Hamilton and George, and his widow Janet Wilkes; all of whom qualified. He gave to his widow the choice of two houses, (one of which, No. 28 Laight street, was selected by her,) to have during her life; also divers movables, and the income of $50,000. The residue of the estate, less some small legacies, he devised and bequeathed to his children.

The executors entrusted the whole management of the estate to Horatio Wilkes. They sold all the real estate, except the house 28 Laight street, for $95,307. Previous to the 25th of

December, 1835, Horatio W. had received divers sums for income of the estate, and paid various claims upon it, and also the small legacies ; and he then had remaining, $203,239 99, exclusive of the proceeds of certain lots. Of this amount, $50,000 was set apart to produce the widow's annuity. Hamilton Wilkes at that time received upon his distributive share of the property, $26,000, the proceeds of real estate sold by the executors ; and the other children received from Horatio, in the aggregate, $101,802 50. This left in Horatio's hands $51,437 49, of the funds of the estate, exclusive of the annuity fund. The whole of this, and $27,000 of the sum set apart for the widow, he wasted prior to January, 1840. The sum left in his hands in December, 1835, was more than all the outstanding debts or claims against the estate.

At the time of his death, Charles Wilkes had in his possession, $10,000 belonging to Mrs. Maria Garnett of the city of Paris, which he had invested in his own name for her benefit. The investment went into the hands of Horatio as executor, and continued in the same form. On the 1st September, 1840, the fund with unpaid interest, amounted to $12,592 40 ; and it was thenceforth held by Horatio, at the request of Mrs. Garnett, as the property and for the benefit of Miss Fanny and Miss Harriet Garnett,—to whom Mrs. G. assigned the fund. Horatio Wilkes wasted and misapplied this fund and the securities in which it was invested.

The Misses Garnett claimed the amount with interest from the estate of Charles Wilkes, and it was paid to them, amounting on the 1st May, 1840, to $12,734 73. Of this sum, $2400 was paid out of the remains of the estate, and there being no more of it left, Hamilton W. paid the balance, at the request of the other complainants, out of his own funds.

A similar claim for $6000 and interest, had been made against the executors by William Banks, administrator of Margaret Campbell, which is now pending in the Court of Chancery.(a)

Horatio Wilkes died on the 23d March, 1840, intestate, with-

---

(a) See the report of this case—*post, Banks, Executor, &c., v. Wilkes.*

out issue, and wholly insolvent. He had spent all his share of the estate, except his remainder in the house 28 Laight street, which is worth less than the Garnett debt. There were judgments against him when he died, to more than $50,000.

The complainants are his heirs and next of kin, and George Wilkes is his administrator.

On the 7th of January, 1837, the defendants recovered a judgment against Horatio Wilkes for $2838 40, for an individual debt of his, having no connection with the estate of C. W. In May, 1844, they sued out a scire facias against the complainants and others, in order to have execution against the interest of Horatio W. in the Laight street property.

The complainants claimed a prior lien upon that interest in respect of the Garnett debt, and of the Campbell debt if that be established against them.

The bill prayed for a decree accordingly, and that Horatio's interest might be sold, and the proceeds applied to the complainant's claim; and for a perpetual injunction against the scire facias.

The answer insisted that the complainants have no lien upon the real estate in question, nor any right thereto which is not subsequent to the lien of the defendant's judgment.

*W. M. Evarts* and *J. Prescott Hall*, for the complainants.

*H. E. Davies* and *S. A. Foot*, for the defendants.

The following points were made in behalf of the complainants.

I. The bill claims an equitable lien in favor of the complainant Hamilton Wilkes, upon the estate of Charles Wilkes, devised to Horatio Wilkes, and of which Horatio died seised, on account of a debt of the testator's paid, *in solido*, by Hamilton, and to which Horatio's share of the testator's estate is bound to contribute, and that such equitable lien is superior to the lien at law of the defendant's judgment.

1. The lands devised were liable to contribute, rateably to the

payment of this debt of the testator. (2 R. S. 369, 372; § 32, 36, 48, 60, 2d ed.)

2. The payment of this debt, *in solido*, by one of the devisees, entitles him to be subrogated to all the rights, remedies and liens, which the creditor had before such payment, upon or against the testator's estate in the hands of the other devisees for their contributory share towards the payment of the testator's debt. (1 Story Eq. 499; *Cuyler* v. *Ensworth*, 6 Paige, 32; *Eddy* v. *Traver*, 6 Paige, 521; *Schermerhorn* v. *Barhydt*, 9 Paige, 28.)

3. The rights and liens of such creditor of the testator, and therefore of such subrogated devisee, are paramount and superior to any lien which any individual creditor of any other devisee, can obtain upon the devised estate in the possession of his debtor. (*In re Howe*, 1 Paige, 128; *Morris* v. *Mowatt*, 2 Paige, 586.)

3. The complainant, Hamilton Wilkes, therefore, has an equitable lien to the amount of $2200, or thereabouts, upon Horatio's estate in remainder in one-sixth of the house in Laight street, superior to the lien at law of the defendant's judgment, and the injunction was properly allowed and should be continued on this ground.

II. The bill further sets forth the pendency of a suit in this court, for the establishment of a claim against the estate of Charles Wilkes, to the amount of some $9000, and that, in case of the adverse result of that suit, the assets of the testator's estate being exhausted, the real estate of the testator in the hands of the devisees will be subject to the satisfaction of such debt.

1. The debt, when established, will be an equitable lien upon the devised estate of Charles Wilkes, of which Horatio Wilkes died seised, for its contributory share thereto, superior to the lien at law of the defendant's judgment upon the grounds above stated.

2. The complainants, the other devisees of Charles Wilkes, are entitled to have this devised estate of Horatio's reserved from execution and sale for his individual debts, until the decision of the pending suit, that in case such claim should be established against the testator's estate, Horatio's share of the devised estate may

contribute thereto, and the injunction was properly granted and should be continued on this ground.

III. The bill sets forth, that Horatio Wilkes was the sole act-ing executor, (though others qualified,) of the estate of Charles Wilkes; that there were abundant assets of the estate to pay all the debts of the same; that Horatio was guilty of a devastavit, and upon an accounting as of January 1, 1840, was found to be indebted to his father's estate in the sum of $59,112 26.

1. The co-devisees of Horatio as against him, are entitled to have the real estate which was devised to him by his father, subjected, *in solido*, to the payment of the debts of the estate of Charles Wilkes, before they shall be called upon to contribute, and would have an equitable lien to that effect upon Horatio's share of his father's estate in his hands, or in the hands of his heirs or devisees.

2. A judgment-creditor's lien upon the property of his debtor is always subject to every superior equitable lien upon the same, whether latent or otherwise.

3. This equitable lien is set up in the bill, and the injunction was properly granted, and should be continued upon this ground also.

IV. The co-devisees of Horatio have also an equitable lien upon their testator's estate in the hands of Horatio to make good the whole sum of $59,112 26, and interest from January 1, 1840, lost to them by reason of the devastavit of Horatio, and if there were no debts of the estate of the testator to be provided for, the co-devisees of Horatio would have a better lien upon his estate derived from their testator, than any individual creditor of Horatio could have.

1. Horatio will be deemed to have taken his full share of the testator's estate in the sum which he wasted, and any devised property found in his possession after the devastavit will be treated as a residuum of the testator's estate for distribution among the other devisees.

2. This lien is set up in the bill, and the injunction was properly granted, and should be continued on this ground.

The defendant's counsel made the following points.

I. Charles Wilkes, the testator, left no real estate undevised; and sufficient personal property to pay all his debts, and although a large amount of his real and personal property was wasted and misapplied by Horatio Wilkes, his son, and the acting executor of his will, still there was personal property unwasted by him, and actually applied to the payment of the testator's debts, and distributed among his legatees, sufficient to pay all his debts.

II. No creditor of the testator, nor any person, standing in the place and having the rights of a creditor, has been unable, after due proceedings in any court, to collect his debt against said testator from his personal representatives, next of kin, or legatees.

III. On the facts stated in the first and second points, the complainants have no equitable claims on the real estate devised to Horatio Wilkes, and in controversy in this case, which can affect the lien of the defendants under their judgment against him.

IV. The debt or demand which the complainants had against Horatio Wilkes in his lifetime, and since his death against his representatives, constitutes no equitable lien on his real estate devised to him by his father, especially to the prejudice of the lien of the defendants by virtue of their judgment.

The counsel for the defendants cited 2 R. S. 369, &c., § 32 to 36, 48, 56, 59; *Schermerhorn* v. *Barhydt*, 9 Paige, 28, 29, 46, 47.

The Assistant Vice-Chancellor.—If the Garnett's in May, 1840, had proceeded to collect their debt against the estate of Charles Wilkes, they would not, according to the provisions of the Revised Statutes, have reached the real estate in question, in the regular course there marked out. Their proceeding was first, against the executors. That would have proved fruitless beyond the $2400. As there was no intestacy, their next remedy was against the legatees; and this would have produced the amount of the claim. Their suit against the devisees lay beyond that against the legatees, and was open to them only upon the entire or partial failure of the latter. *Eddy* v. *Traver*, (6 Paige, 521,) to which I was referred, differs from the case before me in this, that the personal estate of Eddy was insufficient to

pay his debts, and therefore the creditors from the first, had a right against the real estate. That right affected the whole land in the possession of the heirs at law, and having been enforced against a part which one of the heirs had aliened, the alienee was subrogated to the creditor's right against the residue of the land still held by such heir.

There is no doubt of the principle advanced by the complainants, that the lien of a judgment upon the lands of the debtor, is subject to all prior equities which existed in favor of third persons against such lands, *at the time of the recovery of the judgment.* It is, in short, a lien upon such interest as the debtor then actually has, and is affected by the latent equities and liens of others. Herein it differs from the lien of a mortgage ; for the latter in favor of one who makes an advance in good faith without notice, is upheld against all such prior equities. The mortgagee is a *purchaser ;* the judgment creditor has a general lien upon the existing right of the debtor.

The defendant's judgment in this case was recovered in January, 1837, and if they are to be affected at all by the claims set up in the bill, it must be by some equity in favor of the complainants which existed at that time. Hence those claims are to be regarded, as they would have stood in January, 1837. And it was in this point of view, that at the hearing I deemed it material to know whether the grievous devastavit of Horatio Wilkes, which has so much implicated his family, was committed before or after that period. If it were subsequent, the fact that he at that date had in his custody, funds of the estate which he might squander, and thus implicate the other legatees, constituted no equity which could attach upon the land devised to him. The equity which is to impair this judgment, must be one prior to the judgment, otherwise the legal lien of the latter will prevail.

Horatio W. after such lien attached, could no more divest or postpone it by a devastavit, than he could by a mortgage or a sale. In this question of priority, no reference is had to the time of the Garnett's making their claims, or of its payment. The claim existed before the judgment, although enforced afterwards. On the principle upon which the bill is founded, the claim fur-

nishes a basis for the equity set up, provided the waste of the estate had occurred prior to the docketing of the judgment.

But I do not think that the legal propositions for which the complainants contend, will support their case as it is exhibited by the proofs. They do not show when their alleged equity originated, except that it was between December, 1835, and January, 1840. The court cannot upon this proof, hold that it was before January, 1837. And my conviction is clear, that no subsequent devastavit could raise an equity which would interfere with the lien of the judgment.

I will illustrate this farther, by stating what I consider to be the *rationale* of the complainant's argument, without however committing myself in its support. For this purpose, let it be admitted that on the first of January, 1837, Horatio Wilkes had wasted the estate and the Garnett fund, so that in 1840 the latter had to be made good by his brothers and sisters. I commenced with showing that in such a state of things the Garnetts, in the regular course, could not have reached the undivided real estate of Horatio which remains. The complainant's argument is, that on the Garnett's filing a bill in December, 1836, to enforce their claim, in which Horatio and all the others would have been defendants ; the law clearly entitled them to a decree for payment against Horatio, Hamilton, and the others as legatees. Then if pending that suit, the present complainants perceiving that they were to be brought in personally for the debt, had filed a cross bill against Horatio and the Garnetts, setting forth that an ample fund was left in Horatio's hands to pay this debt, which he had squandered ; that as between him and them he ought to pay the whole of it, and that there still remained to him the undivided estate in remainder in the Laight street house ; that this was devised to him by the will, and that in equity it ought to be applied to the Garnett debt, to make up from the realty left to him, the property of others left by the same testator, which he had wasted. And then the cross bill had prayed for a decree to sell this real estate, and out of it to pay the Garnett debt.

Such a course would have exhibited the claim ; and its justice is perfectly manifest. The only open point in it is, whether such claim is a right or equity enforceable directly against the land ;

or whether it is any thing more than a debt for money paid, to which all the debtor's property is liable, but which is not chargeable upon any specific portion of it until judgment or execution.(*a*) The complainants contend that it is the former, and on that footing it would be an equity superior to the lien of a subsequent judgment. But my statement of the proposition shows, that the equity must exist prior to the judgment; and this the case before me does not establish.

I am therefore not called upon to decide, whether there was such an equity upon a devastavit prior to 1837.

If as seems probable, the waste occurred before the defendant's judgment, the complainants ought to be permitted to present the question fairly to the court.

I do not feel at liberty to retain the bill for amendment at this late stage of the cause, and unless the defendants consent to its being amended on terms, it must be dismissed with costs, and without prejudice to a new bill.

There is one inducement on their part to permitting such amendment. In the event of the claim against them being sustained on this bill after amendment, they would not be subjected to the costs of the suit.(*b*)

---

(*a*) See the difference between a right to proceed against a fund, and an equitable or other lien thereon, illustrated in the instance of specialty debts of the ancestor, the heir having aliened the estates descended. *Richardson* v. *Horton*, 7 Beavan's R. 112.

(*b*) The defendants declining to allow the amendment suggested, the bill was dismissed with costs, and without prejudice.