Klein *et al. v.* Mather.

JOSEPH KLEIN *et al.*, plaintiffs in error, *v.* THOMAS MATHER, defendant in error.

*Error to Morgan.*

No doctrine is better settled, than that a co-obligor or surety, who advances money for his co-obligors or co-sureties, shall be indemnified to the extent of his advances.

BILL IN CHANCERY for relief, &c., in the Morgan Circuit Court, brought by the defendant in error against the plaintiffs in error. The cause was heard before the Hon. Samuel

D. Lockwood at the October term 1845, when a decree was rendered in favor of the complainant below.

A full history of the case appears in the Opinion of the Court.

*M. McConnell,* and *T. Campbell,* for the plaintiffs in error.

*S. T. Logan,* for the defendant in error.

The Opinion of the Court was delivered by

PURPLE, J.\*　Thomas Mather filed his bill in chancery against the plaintiffs in error charging that, by an Act of the legislature of the State of Illinois, approved February 25th, 1837, entitled *"An Act permanently to locate the seat of Government of the State of Illinois,"* by which Act the seat of Government for said State was located at Springfield, it was provided that said Act should be void, unless the sum of fifty thousand dollars should be donated by individuals and secured by bonds and security, to be approved by the Governor, payable at such times as the Governor should direct; that the Governor directed the payments to be made in three equal instalments of six, twelve, and eighteen months; that to secure the payment of said sum, the said Mather, together with Joseph Klein, Archer G. Herndon, David Spear, the present plaintiffs in error, together with forty seven others, naming them, Mather being one, executed their joint bond payable to the State Treasurer, dated the 22d day of March, 1837, conditioned for the payment of the said sum of fifty thousand dollars, in the manner required by the Governor, under the provisions of said Act, reciting therein, that the seat of Government had been located at Springfield; that the two first instalments were paid; that the third remained for a long time unpaid, and suit was instituted against Mather alone for the recovery of the residue of the amount due on said bond, and judgment rendered against him for the same, and that he paid the amount, $16,666·66⅔; that he had previously paid his full share of the two first instalments; that the

---

\* WILSON, C. J., and CATON, J., did not sit in this case.

Klein *et al. v.* Mather.

other obligors refuse to pay their share of the last instalment; that four of the obligors in the bond have died, and makes their heirs and personal representatives parties; that eighteen of said obligors, naming them, have become insolvent, and avers that the money due on the bond and paid by Mather, ought to be ratably divided amongst the solvent obligors and their representatives upon the bond, and paid by them to Mather in equal proportions, and prays that the defendants to the bill may be decreed to pay and contribute their just proportions, in manner aforesaid.

David Spear, one of the plaintiffs in error, answers and admits the execution of the bond, the non-payment of the third instalment, the judgment against Mather, and the payment of the same by him; but alleges, that on the 27th day of February, A. D. 1841, the legislature of the State passed a law authorizing the payment of this third instalment, for which judgment against Mather had been rendered in State indebtedness, and that the same was so paid by him, and that Mather has received from divers obligors on said bond large sums of money, internal improvement script, certificates of the State Bank of Illinois, and promissory notes towards the payment so made by him, which were nearly equal in amount to the sum advanced by him, exclusive of his proportion; that he does not know any of the persons named in the bill to be insolvent, and expresses a willingness to pay his just proportion, according to the value of the script in which the bond was discharged; and prays that so much of his answer as is not responsive to the bill may be taken and considered as a cross bill, and that Mather may answer the same and particularly,

1. Whether said indebtedness was not discharged in internal improvement script;

2. What time said payments were made;

3. What was the value of said script at said time;

4. What amount he paid, or considered himself paying, at the time, as his own fair and just proportion; and

5. What he has received by voluntary contributions towards said indebtedness of any sort whatever, stating in what said payments consisted.

The answer of Joseph Klein is the same as that of David Spear.

Archer G. Herndon answers, and admits the execution of the bond, but alleges, that at the time of the execution of the bond, or shortly afterwards, it was understood by him that each of the obligors of the bond were to pay in proportion to the property owned by them in Springfield, and that they afterwards entered into a written contract to that effect; that according to this arrangement, his proportionable share was about one hundred and thirty dollars, and that he was always ready and willing to pay the same. He admits the judgment against Mather, and alleges, that in the spring of 1843, the obligors in the bond held a meeting, at which Mather agreed with him and others, that his share might be paid in internal improvement script, or other State indebtedness, or in current funds of the value of said script, or State indebtedness; and that the same was then worth only twenty cents to the dollar; and that, according to this agreement, he was only indebted in about \$130 in State indebtedness, or \$26 in money, and that he has been ready and willing, and offered to pay the same, together with his proportionate share of the costs of the suit against Mather; that Mather paid the judgment against him in State indebtedness, which was worth but twenty cents to the dollar.

William J. Jones answers, admitting the execution of the bond by his father, Thomas Jones; that he was deceased, and that he, William J. Jones, had been appointed his executor; he admits the non-payment of the third instalment on the bond, and the judgment against Mather for the same; alleges that he has no personal knowledge in the premises; that he has been informed that others have filed their answers in the nature of cross bills, and that he is willing to abide whatever decision shall be made in the premises thereon.

Samuel H. Treat, William Butler, Bennett C. Johnson, Benjamin Talbot, P. C. Latham, Robert Irwin, W. P. Grimsley, Elijah Iles, Geo. Pasfield, Washington Iles, Gershom Jayne, Ninian W. Edwards, John T. Stuart, Thomas Houghan, Erastus Wright, Peleg C. Canady, Bela C. Webster, D. Prickett, and Virgil Hickox answer, admitting that the third instal-

Klein *et al. v.* Mather.

ment was unpaid when due, and that judgment thereon was rendered against Mather, and that he paid the same; but they allege the passage of the Act before referred to, allowing the obligors in the said bond to discharge the same in State indebtedness, and that it was so paid by Mather; that there was an arrangement made between several of the obligors in said bond, to which Mather and they were parties, that each should pay according to the value of his real estate at the time of the removal of the seat of government, and that each of them had paid his share, according to said arrangement, to said Mather, which was received by him as such; that some paid more than their equal shares of the amount due on the bond, and some less, but those who have paid an amount exceeding their proportionate share due by the terms of the bond, ask that the same may be applied for the benefit of such of those who have paid less, the same being under the agreement aforesaid.

The other defendants filed no answers.

Mather states, in answer to the answers of Spear and Klein, that he paid the amount due on the bond in internal improvement script, and insists that it is immaterial to them whether the same was paid in script or cash. He admits that he has received from Ninian W. Edwards, Gershom Jayne, Washington Iles, S. M. Tinsley, P. C. Latham, Simeon Francis, B. C. Johnson, S. C. Kennedy, Elijah Iles, George Pasfield, James L. Lamb, Robert Irwin, W. P. Grimsley, Virgil Hickox, Benj. Talbot, William Butler, James Adams, S. B. Opdycke, B. C. Webster, Erastus Wright, John T. Stuart, David Pricket, S. H. Treat, M. Mobley, James R. Gray, and Thomas Houghan, obligors in said bond, the sum of $11,616·50 in various proportions, according to an agreement entered into amongst them, and to which said Spear and Klein were parties; that by said agreement said Spear was to pay, as his proportion, the sum of $497·12, and said Klein the sum of $912·25, and that his, Mather's proportion was, by the same agreement, $829·50, and that he is still willing to comply with his agreement, if the same is enforced against the residue of the contracting parties; that

he also received from John Williams on said bond, as a contribution, the sum of $443·06; that this is all that he has received; that he made two separate payments on the said bond, one of $10,103·25, on the 15th day of March, 1843, and that the market price of script at that time was twenty five cents to the dollar; and the other one on the 19th day of June, 1843, of $6563·41, at which time the script was worth thirty three cents to the dollar; that he obtained the same by giving his note to the State Bank at eighty cents to the dollar.

Mather filed a general replication to the several answers of the defendants in the Court below.

The depositions of John Irwin, Arnold P. Robinson, John M. Cabiness, and Abner J. Ellis, taken on the part of Mather, were read in evidence to prove the insolvency of several of the obligors in the bond. I have carefully examined this evidence, and think the same sufficient, *prima facie*, to prove the insolvency of those persons who are found to be insolvent by the decree in the Court below, being twelve in number.

Mather also proved by John Sprigg, teller of the State Bank of Illinois, that he furnished Mr. Mather with State indebtedness to pay the last instalment on the bond out of the funds of the Bank; that the agreement with Mather was, that he was to take the script at eighty cents to the dollar, payable in State Bank certificates, or obligations of individuals, payable to the Bank in such certificates; and that a number of persons, obligors in the bond, did execute their notes to the Bank, in part payment for said script, and that Mather settled the residue with the Bank, and on such settlement executed his note to the Bank for $2531·59, dated August 19, 1843, payable twelve months after date; that previous to executing this note, Mather had made a payment towards said script in notes and Bank certificates, and also made another at the time said note was executed; that the greater proportion of Mather's note still remains unpaid, and that State Bank certificates were worth about sixty five cents to the dollar; that the script was furnished to Mather about the last of February or first of March, A. D. 1843;

that he does not know its intrinsic value, and does not re-
member the value of Bank certificates at that time.

This was the substance of all the testimony. The Circuit
Court rendered a decree dismissing the bill as to the twenty
six obligors, who, as appears by their answers, and by the
answer of Mather to Spear and Klein's answer in the nature
of a cross bill, had paid their full share and proportion of the
said bond.

It recites that Mather paid in internal improvement script
procured by him of the State Bank of Illinois, at a discount
of twenty per cent. payable in Bank certificates, in full of
the last instalment on said bond, and for which he has not
been indemnified, the sum of $4607·55, on the 19th day of
June, 1843; that Garret Elkin and eleven others, obligors in
said bond, are insolvent; and further adjudges that, for his
indemnity, Mather shall recover of each of the other defend-
ants below, surviving obligors in said bond, the sum of
$351·55, being one twelfth of the said sum of $4607·55, less
the said twenty per cent. discount, and six per cent. interest
thereon from the 19th day of June, 1843; and one eleventh
of the costs, saving the costs of service of process on the
twenty six paying obligors, and the like sum from the execu-
tors, administrators, &c., (naming them), of such persons,
obligors in said bond, as had died since the execution thereof,
out of assets in their hands to be administered, and also that
he recover of each of the twelve insolvent obligors, one half
the aforesaid sum of $351·55, and one half the costs as above
stated, for the use and benefit in *pro rata* and fellowship
proportions of the solvent obligors, or the personal represen-
tatives of such of them as have died, and against whom the
decree has been rendered; that execution issue in the premi-
ses, and that with the assent of Mather's solicitor the decree
may be discharged and satisfied, except costs, in certificates
of the State Bank of Illinois.

This decree of the Court is assigned for error.

From the whole record, the facts of the case, when briefly
summed up, amount to this: That on the 22d day of March,
1837, Mather and forty nine others owed the State of Illinois,
upon their joint bond of that date, $50,000, to be paid in

equal instalments, at six, twelve and eighteen months; that the two first instalments were paid, and the last, amounting to $16,666·66⅔, remained unpaid; that upon this, Mather was sued alone, and judgment recovered against him; that on the 29th day of February, 1841, the legislature passed an Act authorizing this debt to be discharged in State indebtedness; that Mather, by an arrangement with the State Bank, procured the necessary funds, and paid the judgment, part on the 15th day of March, A. D.. 1843, and the residue on the 19th day of June following; that the State indebtedness cost him eighty cents to the dollar in State Bank certificates, and that, for that portion which was not paid to the Bank, or by the twenty six paying obligors in the bond, through him arranged, he gave his note, a portion of which was unpaid at the time the depositions were taken; that twenty six of the obligors had paid and arranged their full proportion of the judgment, excluding the twelve insolvent obligors in the calculation, and that Mather paid by the 19th day of June, 1843, an amount over and above all that he had received, the sum of $4607·55, and he claims that this amount ought to be refunded to him in equal proportions, with interest from the time of payment, by the eleven remaining solvent obligors; the decree of the Circuit Court in the case was made on the 18th day of November, 1845, as before stated, and is against the plaintiffs in error, and eight others, who have not paid any portion of this last instalment on the bond. Mather procured the funds to make the payment with, at eighty cents to the dollar, payable in Bank certificates, and the decree, by the assent of his counsel, directs payment to be made to him in the same funds which he has paid, or is compelled to pay to the Bank.

A short calculation will determine whether, by the principles upon which it proceeds, this decree is erroneous or otherwise:

Mather, for the joint benefit of himself and the other obligors, advanced, at the time before stated, in State indebtedness, the sum of     $16,666·66

This, at eighty cents to the dollar, would be worth the sum of          ·    13,333·32

There are thirty eight solvent obligors, Mather
  being one of them, and the proportionable share
  of each would be                                        350·87
Deduct Mather's share from the amount in value
  by him advanced, and it will leave due to him
  from the thirty seven other solvent obligors,
  the sum of                                           12,982·45
Mather received from the twenty six paying obli-
  gors, by arrangement probably in State in-
  debtedness, $12,059·11, worth in certificates,
  as purchased by him, the sum of                       9,667·28
Deduct this from the amount advanced by him,
  and it leaves to be paid by the eleven remain-
  ing solvent obligors                                   3,335·17
To make this sum, each should have paid at the
  time the advance was made by Mather,                    308·18
And the interest on the same from the nineteenth
  day of July, 1843, to the time of the decree,
  would amount to                                          45·47

    Making the sum of                                $348·65

which should, in any event upon this basis, be paid to
Mather by each of the solvent non-paying obligors for his
indemnity. This amount, it will be seen, would have been
considerably increased, had not the twenty six paying obli-
gors advanced more than their proportionate share of the
amount due.

I have before shown, that there had been paid at
  the Bank certificate price, or value of the State
  indebtedness as purchased by Mather, the sum of   9,667·28
when, in fact, their proportionate share at $350·87
  each would only amount to                          9,132·62
being $534·66 more than they were equitably bound to pay.

    And if interest should be calculated on the amount due
from each of these non-paying solvent obligors, from the fif-
teenth of March, 1843, the time when Mather advanced the
sum of $10,103·25, it would amount to the further sum of
$6·24 against each, and this added to the $348·65, before
estimated as due from them to Mather, would make the sum

actually recoverable by him upon this basis, $354·89, instead of $351·55, as found by the decree of the Court.

These premises considered, the only remaining question is, whether he is equitably entitled to recover according to the principles here laid down. And upon this point, we think there cannot be a doubt. After the passage of the law of the twenty seventh day of February, 1841, allowing the obligors upon this bond to pay in State indebtedness, the plaintiffs in error suffer more than two years to elapse without an offer on their part to discharge their obligations in this or any other manner. They had abundant opportunity, if they had desired to do so, to avail themselves of the provisions of the law passed for their relief. Mather had been sued alone, judgment had been rendered against him, and he is compelled to pay the whole debt, or submit to a sacrifice of private property. He procures the funds at a stipulated price, to be paid in certificates of the State Bank of Illinois, and he now seeks from these plaintiffs an indemnity for the proportionate amount advanced by him for each, and in the same funds which he has advanced, or is bound to pay. To this he is clearly entitled. No doctrine is better settled, than that a co-obligor or surety who advances money for his co-obligors or co-sureties, shall be indemnified to the extent of his advances. *Eddy* v. *Traver*, 6 Paige, 521; *Hickman* v. *McCurdy*, 7 J. J. Marsh. 560; *Mitchell* v. *Sproul*, 5 do. 270. And although it may be true, that from the time the payment was made by Mather to the date of the decree, State Bank certificates may have advanced in price and value, yet, for aught that appears to the Court, they may have been of equal worth to him at either period, and it was the fault and negligence of the plaintiffs that they did not proceed and pay them, or in some other manner, meet their just obligations at an earlier season. It is their own laches, if they have lost by this decree.

The decree of the Circuit Court is affirmed with costs.*

*Decree affirmed.*

---

* A petition for a rehearing of this cause was filed, which was denied.