MARY HOTALING and CLARENCE PETERS v. HARRIET ANN MARSH and Others.

*Will — gift to any grandchild, born after the division of the estate, from the remainder after the expiration of a life estate — preference of an after-born grandchild over the other grandchildren who had shared in the estate upon its division.*

A testator by his will, among other things, provided: "Of all my other estate, whether real or personal, held by me, or in trust for me, at the time of my death, it is my wish that my executors dispose of the same or put it in a shape to divide among my grandchildren so that each may receive their share on becoming of age. * * * It may so happen that my daughter, Harriet Ann, may live to have other children after my death, and after my executors may have divided my estate; in that case it is my wish that they come in and share in the estate left my wife after her death, in preference to the others, so that all my grandchildren may eventually, as near as may be, receive the same amount."

The testator left his widow, one daughter and grandchildren surviving him.

Two successive actions for partition and sale of the real estate, of which the testator died seized, were brought and judgments were obtained in each and certain of the lands were sold.

The widow, to whom a portion of the proceeds of sale of this property had been set off for life in lieu of dower, subsequently died, and thereafter a petition was presented by a grandchild of the testator, who was born to his daughter Harriet Ann, after the judgment had been recovered in each of the actions in partition, and also after an action had been brought and decided in a suit instituted by the executors for the purpose of obtaining a construction of the will of the testator, for an order making her a party to the first action in partition, and providing for the payment to her of such sum as she should be entitled to out of the moneys which had been in such action paid into court for the benefit of the widow during her life.

*Held,* that it was the evident intention of the will that this grandchild, born of his daughter, Harriet Ann Marsh, before the final distribution of his estate, should have an equal proportional part of this money with the other grandchildren of the testator, and participate equally with them in its distribution.

That an objection that this grandchild did not become entitled to share equally with the others in the final distribution of the estate, for the reason that she was born prior to the time when the executors had, under the decree of the surrogate, divided so much of the estate as was under their control, although based upon a literal reading of the will, could not be maintained, as it was not to be supposed that the testator intended that her right to this equality should be made dependent upon her birth taking place after the division of the estate by the executors.

In the action brought to procure a construction of the will, it was adjudged "that no child born to said Harriet Marsh after the said Clarence did arrive at lawful age, will be entitled to any share in said residuary estate." Clarence was a

grandson who attained his majority within a few months after the decease of the testator.

*Held,* that, as this judgment was rendered long before the birth of the grandchild of Harriet Ann Marsh, the petitioner, and made no provision whatever for that event, or the protection of her possible interest in the estate under the will of the testator, it could not be operative upon her.

That, for the same reason, if the judgment in the first action for partition could be construed as intended to exclude her from participation in the proceeds of the property of the estate, by binding her to a literal observance of the testator's directions, it could not be permitted to be attended with that result.

*Brevoort* v. *Brevoort* (70 N. Y., 136) not followed; *Monarque* v. *Monarque* (80 id., 320) followed.

The surrogate did not directly adjudge that the grandchild, the petitioner, was entitled to no part of the moneys then to be distributed, but he directed such a distribution to be made as excluded her from a share of these moneys.

*Held,* that this direction of the surrogate did not prevent the petitioner from receiving the full share of the testator's estate as it was intended to be given by the will.

That, as the effect of the surrogate's decree, as well as of the judgment rendered in the action brought by the executors for the construction of the will, had been to devote her proportionate part of the other funds of the estate to the benefit of the other grandchildren of the testator, the petitioner was entitled to be placed in their position, as to the fund still remaining, for the reimbursement to her of the amount of her share in this manner used and appropriated.

APPEAL by Clarence Peters and Abbie Simpkins, from orders entered in the office of the clerk of the county of New York, directing the distribution of moneys arising under the will of Abel S. Peters, deceased.

*William H. Atwood* and *Charles S. Simpkins,* for the appellants.

*John C. Gulick,* guardian, etc., and *Valentine Marsh,* for the respondents.

DANIELS, J.:

This action was brought in the year 1859, to partition four parcels or lots of land previously owned by Abel S. Peters, deceased. He died on the 14th of May, 1859, having made and executed a will for the disposition of his entire estate. This will was proved and admitted to probate before the surrogate of the city and county of New York in September, 1859. The testator left his widow, one daughter and grandchilden surviving him. And after providing for the payment of his debts and funeral expenses, he devised to

his widow for life one-third of the proceeds of bonds and mortgages, in which were directed to be invested the moneys obtained from these four parcels of land. He also bequeathed to her, in her own right, certain articles of personal property. One-half of the remaining two-thirds he bequeathed to his daughter Harriet A. Marsh, and the other third in equal parts to his two daughters-in-law and their heirs. The widow declined to accept the provision in this manner made for her by the will, and this action was brought by two of the grandchildren for the partition and sale of this property. And a judgment to that effect was recovered in the action, and three of the lots were sold, and one-third of the proceeds was deposited in court for the benefit of the widow as doweress in her husband's estate.

After that it was discovered that the testator died seized of other parcels of real estate. And a further action was commenced by Valentine Marsh, who was one of the grandchildren, for the partition and sale of that property. This action resulted, as the other had, in a judgment to that effect, and the property was sold. And as the widow appears to have declined to accept a gross sum in lieu of her dower in the property, one-third of the proceeds was directed to be, and was, brought into court to be held during her life for her benefit. And during her life she had the benefit of these and other small amounts of money as doweress in this estate.

She died on the 24th of September, 1887. And in November, 1887, a petition was presented by Grace S. Marsh, who is a grandchild of the testator, for an order making her a party to the first action in partition, and providing for the payment to or for her of such sum as she would be entitled to out of the moneys in this manner brought into court for the benefit of the widow during her life. The petitioner was born on the 30th of January, 1870, after the judgments had been recovered in each one of the actions in partition; and also after an action had been brought and determined in a suit by the executors for the construction of the will of the testator. An order was made upon her petition making her a party to the first action in partition, and appointing a guardian *ad litem* to protect her interests. A reference was thereupon ordered to a referee to take proof and report as to the extent of her interest in the moneys in this manner brought into court and still subject to its

order.   He reported the petitioner to be entitled to an equal proportionate part of these moneys with the other grandchildren of the testator.   Upon the application made to confirm the report, and upon the hearing of exceptions taken to this conclusion, the petitioner was held to be entitled to so much of this fund as would place her upon an equality with the other grandchildren of the testator.   They had previously received, or been provided with, their shares of the proceeds of the sales of the real estate, no part of which had been reserved for the petitioner.   And her right to be made equal to them in the division of these final funds was denied by the assignee of one of the grandchildren, and at least two of the others.

The part of the will upon which the right of the petitioner to this preference in the distribution of the fund depends, is chiefly contained in its third paragraph.   By this paragraph the testator directed :

" Of all my other estate, whether real or personal, held by me, or in trust for me, at the time of my death ; it is my wish that my executors dispose of the same or put it in a shape to divide among my grandchildren, so that each may receive their share on becoming of age, for which purpose I hereby authorize them to sell a part or the whole or divide up and hold such part as they may think to the interest of the youngest ones ; for instance, the two front and rear houses number one hundred and thirty-four and one hundred thirty-six West thirteenth street, is lease property, and now pays double what the principal would if sold ; all of which my said executors shall divide equally, as near as may be, among my grandchildren, viz., the children of my daughter, Harriet Ann Marsh, and the children of my two sons, Milton and Franklin, of the latter is Clarence Peters, Franklin Peters and Harriet Ann Peters, or their survivors, whenever either shall become of age.   It may so happen that my daughter Harriet Ann may live to have other children after my death, and after my executors may have divided my estate ; in that case it is my wish that they come in and share in the estate left my wife after her death in preference to the others, so that all my grandchildren may eventually as near, as may be, receive the same amount."   It is quite apparent from this language that his intention was that any child or children afterwards born of his daughter, Harriet Ann Marsh, and before the final distribution of his estate, should

participate equally with his other grandchildren in that distribution. The petitioner is such a child. She was born after the decease of the testator and before a final disposition or distribution was made of the proceeds and property of his estate· remaining in the hands of the executors. But it has been objected, on the part of the persons resisting her application, that she did not become entitled to share equally with them in the final distribution of the funds and property of the estate now in controversy, for the reason that she was born prior to the time when the executors had, under a decree of the surrogate, divided so much of the estate as was under their control. But while this is the literal reading of this part of the will, it is not to be supposed that the testator intended that her right to this equality, as it has been now maintained, should be made dependent upon her birth taking place after the division of the estate by the executors.

His leading object and intention, on the contrary, was that all his grandchildren should be made equal in the distribution of the estate, and that this equality should be obtained through its division by the executors or the final distribution of the one-third of the proceeds or property intended to be appropriated for the benefit and use of the widow during her lifetime. She did not consent to the provision which the testator proposed to make for her in lieu of her dower, but elected to take her dower in the property of the estate. And it was provided for in the manner which has already been mentioned.

The judgment in the first action ˙of partition provided for protecting and maintaining the rights and interests of any child of Harriet A. Marsh, born subsequent to the decease of the testator, but only as that was literally specified by the directions contained in this paragraph of the will; for one-third of the proceeds of the sale of the lands affected by that judgment were directed to be paid into court to the chamberlain, "to be invested and the interest of the same paid to the said defendant Harriet Peters during her life. and at her death the principal sum so invested to be divided between the said five grandchildren of the testator, or such of them as shall then survive, subject, however, to open and let in to share in the same any children that said Harriet Ann Marsh may have pre-

viously had lawfully born to her after the death of said testator, who shall then survive; and provided, also, that if, previously to the birth of said after-born children, a division of the residuary estate of the said testator shall have been made by his executors between said five grandchildren, or the survivors of them, then said after-born children shall be preferred out of said principal sum to be divided, upon the death of the said Harriet Peters, to the extent, as far as may be, of making them equal with said five grandchildren. But if the said Harriet Peters consent to accept a sum in gross out of said principal sum in lieu of her dower, to be ascertained upon the principles applicable to annuities, then said referee shall pay such gross sum to her upon her executing, acknowledging and delivering to him a release of all her title, right and interest in said premises; the balance of said principal to be invested by said chamberlain and the interest divided equally between the said five grandchildren during the life of said defendant Harriet Peters, and upon her death the same to be equally divided between them and the survivors, subject, however, to open and let in to share in the same any children that said Harriet Ann Marsh may previously have had lawfully born to her after the death of said testator, and who shall then survive; and provided, also, that if, previous to the birth of said after-born children, a division of the residuary estate of the said testator shall have been made by his executors between said five grandchildren, or the survivors of them, then said after-born children shall be preferred out of the said sum so invested to the extent, as far as may be, of making them equal with the said five grandchildren." But as it literally followed in this respect the language of this part of the will, it has been resisted as inoperative in this action. But this direction should receive a reasonably fair construction for the promotion of the interests and the protection of the petitioner, as that has already been suggested, for this part of the will, to carry into effect what appears to have been the leading and controlling object animating the testator in giving his directions. The substance should not be sacrificed to the mere formal manner in which the testator has directed his intention to be observed, but the intention, being the paramount object, should be maintained, as long as that may be done without sacrificing it to a literal compliance with the manner

in which the testator intended it should be carried into effect, for he did not subject the right of the after-born child or children to be placed upon an equality with the other grandchildren upon the literal ability to attain that equality after his executors should have divided his estate. There was no condition upon which this paramount intention was made dependent, but the final suggestions made in this part of the will were for the purpose of pointing out and securing the manner through which this end might be accomplished. No intention was expressed or implied of literally rendering the right of the petitioner dependent on the ability to secure this equality in the precise manner suggested by this part of the will. But the governing object was to make her equal, so far as it extended, with the other grandchildren of the testator.

In the action for the construction of the will it was adjudged " that no child born to said Harriet A. Marsh, after the said Clarence did arrive at lawful age, will be entitled to any share in said residuary estate." Clarence was a grandson who attained his majority within a few months after the decease of the testator. But precisely how far this adjudication was intended to extend does not appear from the language of the judgment. But, as this judgment was rendered in the year 1862, long before the birth of the petitioner, and it made no provision whatever for that event, or the protection of her possible interest in the estate under the will of the testator, it cannot be operative upon her. And if the judgment in the first action of partition should be construed as intended to exclude her from participation in the proceeds of the property of the estate, by binding her to a literal observance of the testator's directions, it could not, for the same reason, be permitted to be attended with that result. In *Brevoort* v. *Brevoort* (70 N. Y., 136) it was generally considered that persons not in being would be bound by a judgment in partition recovered in an action to which all the persons then in being were made parties. But in *Monarque* v. *Monarque* (80 N. Y., 320) it was further held that this would not be the effect of the judgment unless some provision was made for the protection of the persons who might afterwards come into existence and be interested in the estate. (Id., 326.) No such provision was made by the judgment recovered in the executor's action. And none literally in the first suit. And the court, consequently, could not

deprive the petitioner of her right by this general declaration contained in the judgment in the executor's action, even if it should be held to be applicable to this controversy.

In the early part of the year 1870 a settlement of the executor's accounts took place before the surrogate of the county of New York. The petitioner was made a party to this proceeding, but the funds in the hands of the executors were directed to be distributed among the other legatees. And the petitioner was thereby excluded from sharing in this distribution. She was then under six months old. A special guardian was appointed to protect her interests, but seems to have failed, as is not uncommonly the case with persons acting in this capacity, to afford her that protection. For, by this paragraph of the will, it was contemplated that the petitioner, as the daughter of the testator's daughter, should be secured her share of the funds and property in this manner to be divided. That is apparent from the general directions contained in this paragraph for the division of that part of the testator's estate which was to be divided among his grandchildren. For it was in the event of the child being born after the distribution to be made by the executors that it was directed that her share should be made up to her out of the property devoted to the support of the widow's life estate. It was contemplated, as it ordinarily would be in case of the birth of the person before the final settlement and distribution, that the individual born would be secured his or her share of the estate in the hands of the executors at the time of the settlement of their accounts. But that was defeated by the decree which was entered, and the share or proportion of the estate in the hands of the executors which should have been set apart for the benefit of the petitioner was paid over to or for the other parties mentioned in these directions in the will. The surrogate did not directly adjudge that the petitioner was entitled to no part of the moneys then to be distributed, but he directed such a distribution to be made as excluded her from the benefit of these moneys.

But this direction of the surrogate will not prevent the petitioner from receiving her full share of the testator's estate as it was intended to be given by this clause of the will. For the effect of it, as well as of the judgment rendered in the action brought by the executors for the construction of the will, has been to devote her proportionate part

of the other funds of the estate for the benefit of the other grand-children of the testator, and to Abbie Simpkins as assignee or trans-ferree of one of them. And that entitled her to be placed in their position as to the fund now remaining and in controversy for the reimbursement to her of the amount of her share in this manner used and appropriated. She was compulsorily deprived of it by the action of the surrogate for the benefit of these other parties. And her property having been divided in that manner, she is entitled to stand in their places for the reimbursement of the amount to her which was under these adjudications appropriated to persons not legally or equitably entitled to receive it. This follows from the application of the principle generally enforced in equity, that where the property of one person may be taken or appropriated for the benefit of another the persons whose property may be so applied will be allowed to stand in the place of the person or persons receiving it for reimbursement out of a fund in which all would otherwise be entitled equally to participate. (*Platt* v. *Brick*, 35 Hun, 121; *Wilbur* v. *Warren*, 40 id., 203.) This principle is generally employed to promote and secure the ends of justice. And it has been held to apply to the protection of one person who at the request of another advances his money to redeem or pay off a security in which the person making the request has an interest, or to the discharge of an obligation for which he may have become bound. (*Gans* v. *Thieme*, 93 N. Y., 225, 232.) And the principle would certainly seem to be as applicable to a case where one party has been obliged by judicial action, as the petitioner has been, to have her money or property appropriated for the benefit of others, as it is where that results from a request. And this was followed in *Acer* v. *Hotchkiss* (97 N. Y., 395). The case of *Eddy* v. *Traver* (6 Paige, 521), approaches still nearer in the application of this principle to the subject of this controversy. And the decision made in *Smith* v. *Wyckoff* (11 Paige, 49), is still more pertinent to the disposition of this appeal. For there it was held that the owners of the personal estate were entitled for their reimbursement to stand in the place of a creditor who had obtained the payment of a debt out of that estate, which had been charged upon lands specifically devised. And this was likewise followed in *Graham* v. *Dickinson* (3 Barb. Ch., 169). There the personal estate of the testator had been sub-

jected to the payment of his debts. That proved to be insufficient, and his executors obtained leave from the surrogate to sell his real estate and apply the proceeds to the payment of the debts. After that had been done a claim in favor of the estate had been recovered from the French government. And it was held that the devisees or owners of the real estate were entitled to resort to this fund for the reimbursement of what had been taken from them for the payment of the debts under the order of the surrogate. And this was also held to be the law in *Couch* v. *Delaplaine* (2 N. Y., 397). And it entitled the petitioner to be made good out of the shares of these other parties in the final fund not yet distributed, to the extent that her interest in the distribution of the estate, upon the final settlement of the executors, had been appropriated to the use and benefit of these other persons. Upon each of the grounds which have been considered she was entitled to be placed upon the equality which the testator intended and directed for her benefit, and to be paid out of the money still under the control and subject to the direction of the court.

These considerations entirely dispose of this controversy, and render it unnecessary to consider other points which have been made and discussed by the counsel. Neither of the authorities cited in support of the appeal sanctions any other disposition of it, and the order from which the appeal has been taken should be affirmed, with ten dollars costs and also the disbursements.

VAN BRUNT, P. J., and BRADY, J., concurred.

Order affirmed, with ten dollars costs and disbursements.